UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY MCLAUGHLIN-SMITH,

      Plaintiff,

v.

YVONNE BRANTLEY,
in her Individual capacity,

      Defendant.

Case No. 24-
Hon.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COME Plaintiff, CASEY MCLAUGHLIN-SMITH, by and through his

attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant,

YVONNE BRANTLEY, in her Individual capacity, stating as follows:

## COMMON ALLEGATIONS

1.    That Plaintiff is a resident of the County of Shiawassee, State of

Michigan and is otherwise domiciled in the State of Michigan.

2.     That upon information and belief, Defendant Yvonne Brantley is a resident of the County of Bay, State of Michigan and is otherwise domiciled in the State of Michigan.

3.     That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4.     That this Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

5.     That on or about January 14, 2018, Plaintiff began working for the Michigan State Police.

6.     That upon hire, Plaintiff attended the 134th Trooper Recruit School.

7.     That following graduation from the training academy, Plaintiff received an assignment to the MSP Flint Post.

8.     That throughout Plaintiff's career, he has received various awards and accolades, including, but not limited to, Oscar G. Olander Fleet Safety Award and a distinguished service award from the Department of Military and Veterans Affairs.

9.     That Plaintiff has also taken additional training and served in additional roles, such as a Field Training Officer and an Accident Investigator.

10.     That at all times material hereto, Plaintiff performed his job duties in a satisfactory and/or above-satisfactory manner.

11.   That with Plaintiff's assignment to the Flint Post, Plaintiff subsequently came under the supervision of First Lieutenant Yvonne Brantley, Post Commander, and Sergeant Jared Chiros.

12.   That on or about March 25, 2023, Plaintiff attended a wedding of coworker from the Flint Post.

13.   That several other employees attended the wedding, including Sgt. Chiros.

14.   That following the wedding, Plaintiff along with a number of other employees went to a local bar restaurant.

15.   That Sgt. Chiros was also present at said establishment.

16.   That during the evening, Sgt. Chiros approached Trooper Neilson, who had previously reported Sgt. Chiros' falsifying a police report, and began calling him a "snitch."

17.   That Sgt. Chiros continued to berate Trooper Neilson, stating, "Yup, you snitch ass bitch."

18.   That Sgt. Chiros subsequently approached Plaintiff and related that he wanted to go outside and fight Trooper Neilson.

19.   That notwithstanding Sgt. Chiros' vocalizing his desire to assault and batter Trooper Neilson, Trooper Neilson left the bar shortly thereafter.

20.   That on or about March 27, 2023, Trooper Neilson filed a Blue Team

complaint, a form of internal complaint that may be submitted by employees or private citizens, with the Department of Internal Affairs, reporting Sgt. Chiros' retaliation and aggressive behavior at the above-referenced wedding.

21.     That at one point after March 27, 2023, F/Lt. Brantley ordered Plaintiff into her office.

22.     That F/Lt. Brantley then ordered Plaintiff to tell her everything that had happened at and after the above-referenced wedding.

23.     That after Plaintiff reported what he had observed, F/Lt. Brantley advised Plaintiff to pretend like the meeting had not occurred and do not tell anyone about it.

24.     That F/Lt. Brantley continued to advise Plaintiff that if any coworkers inquired about him meeting with Brantley, he should tell them he was inquiring in the sergeant-in-training program, something Plaintiff had never inquired about.

25.     That on or about May 8, 2023, Plaintiff was interviewed by Internal Affairs, specifically Specialist Lieutnant Gina Gettel.

26.     That Plaintiff reported Sgt. Chiros' retaliation and assaultive behavior towards Trooper Neilson.

27.     That following Plaintiff's interview, Sgt. Chiros inappropriately pulled Plaintiff into a hallway and questioned Plaintiff whether his wife, who also happened to be a trooper an present after the wedding, had been interviewed and what she

observed.

28.     That on or about May 12, 2023, Sgt. Chiros was suspended after multiple people came forward with allegations of sexual assault, assault, and other mistreatment committed by Sgt. Chiros.

29.     That Plaintiff subsequently received additional written questions from Spl/Lt. Gettel, inquiring into whether Sgt. Chiros had contacted him following the interview.

30.     That on or about June 7, 2024, Plaintiff reported to Spl/Lt. Gettel that Sgt. Chiros had contacted him approximately six (6) different times following his initial interview.

31.     That in late August 2023, Plaintiff heard from coworkers information that he might have been placed on the *Brady-Giglio* list maintained at the Genesee County Prosecuting Attorney's Office.

32.     That a *Brady-Giglio* list is a list complied at prosecutors' offices containing the names and details of law enforcement officers how have sustained incidents of untruthfulness or lack of candor placing their credibility into question and requiring that said information be disclosed to criminal defendants.

33.     That the term *Brady-Giglio* list arises from two U.S. Supreme Court cases: (1) *Brady v Maryland*, 373 US 83; 83 S Ct 1194 (1963), which requires the prosecution turn over all exculpatory evidence to the accused and includes evidence

that may be used to impeach the prosecution's witnesses, such as police officers; and

(2) *Giglio v United States*, 405 US 150; 92 S Ct 763 (1972), which determined that

the reliability of a witness may be determinative of guilt or innocence and requires

disclosure of all evidence effecting credibility.

34.     That placement on such a list makes it virtually impossible to act as a

law enforcement officer within the jurisdiction as prosecutors will frequently decline

to pursue criminal charges filed by officers on the list.

35.     That Plaintiff did not receive any formal notice that he was placed on

the Genesee County *Brady-Giglio* list.

36.     That Plaintiff was never advised as to why or how he was placed on

said *Brady-Giglio* list.

37.     That Karen Hanson, Managing Assistant Prosecuting Attorney, had

informed another trooper that Defendant Brantley had reported to Tammy Phillips,

Chief Assistant Prosecuting Attorney, that Plaintiff and other troopers had lied during

their internal affairs interviews regarding Sgt. Chiros.

38.     That Ms. Hanson further reported that Defendant Brantley refused to

give specifics and, as such, everyone who participated in the internal affairs

interviews against Sgt. Chiros were placed on the *Brady-Giglio* list.

39.     That Defendant Brantley's allegations that Plaintiff and other troopers

lied during an internal affairs investigation were defamatory, fabricated, and

malicious.

40.     That while various troopers were placed on the *Brady-Giglio* list, individuals from the Genesee County Prosecutor's Office noted that they were unable to write any charges for law enforcement officers on the list, questioned whether arrests made by those individuals on the list were legal, and acknowledged that their office might have to dismiss charges based on the inability of certain officers to testify.

41.     That on or about September 11, 2023, Lieutenant Thomas Dhooghe and Lieutenant Michael Phillipps formally advised Plaintiff and others that they had been placed on the Genesee County *Brady-Giglio* list.

42.     That it should be noted that both Lt. Dhooghe and Lt. Phillipps were implicated in the wrongdoing engaged in by Defendant Brantley and Sgt. Chiros and both were forced to end their employment with the Michigan State Police following the above-referenced Internal Affairs investigation.

43.     That Plaintiff is unaware of the total time he spent on the *Brady-Giglio* list.

44.     That Defendant Brantley caused Plaintiff to be placed on the *Brady-Giglio* list in retaliation for his reporting of Sgt. Chiros' retaliation and assaultive behavior towards Trooper Neilson.

45.     That Defendant's actions constitute free speech retaliation in violation

of the First Amendment, 42 U.S.C. § 1983.

46.     That Defendant's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

47.     That Defendant's actions constitute a denial of the equal protections of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

48.     That Defendant's actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

49.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

50.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

51.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – FREE SPEECH RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C. § 1983

52.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

53.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

54.    That the First Amendment to the United States Constitution provides a right to freedom of speech and expression.   U.S. CONST. amend. I; *Keyishian v. Board of Regents*, 385 U.S. 589, 605-606; 87 S. Ct. 675 (1967).

55.    That at all times material hereto, Defendant acted under the color of State law.

56.    That Plaintiff engaged in constitutionally protected speech or conduct.

57.    That Plaintiff engaged in constitutionally protected speech or conduct by reporting Sgt. Chiros' retaliation and assaultive behavior towards Trooper Neilson.

58.     That said speech addresses a matter of public concern as it is a matter of public concern whether law enforcement officers are conducting themselves lawfully in the performance of their duties. *Huber v. Leis*, 704 F. Supp. 131, 134 (S.D. Ohio 1989); *Marohnick v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

59.     That Plaintiff's interest in said speech outweighs any interest the Michigan State Police may have in regulating said speech, if any.

60.     That Defendant had knowledge of Plaintiff's protected activity.

61.     That Defendant took adverse action against Plaintiff, including, but not limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list.

62.     That Defendant's actions against Plaintiff would deter a person of ordinary firmness from engaging in such conduct.

63.     That a causal connection exists between Plaintiff's protected speech and the adverse action.

64.     That Defendant would not have taken the same adverse actions against Plaintiff in the absence of Plaintiff's protected speech.

65.     That Defendant is not entitled to qualified immunity.

66.     That Plaintiff's right to freedom of speech is clearly established.

67.     That Defendant's actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

68.     That as a direct and proximate result of Defendant's unlawful actions,

Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

69.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

70.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

71.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 of his Common Allegations and paragraphs 52 through 70 of Count I, word of word and paragraph for paragraph, as if fully restated

herein.

72.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

73.     That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

74.     That "[a] public employee is entitled to procedural due process— including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property interest or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

75.     That at all times material hereto, Defendant acted under the color of State law.

76.     That at all times material hereto, Plaintiff had a property interest in his continued employment.

77.     That Defendant interfered with Plaintiff's property interest in his continued employment by securing Plaintiff's placement on the Genesee County *Brady-Giglio* list by falsely accusing Plaintiff and others of lying during investigations into Sgt. Chiros' improper and unlawful behavior.

78.    That Defendant interfered with Plaintiff's property interests without providing any due process.

79.    That when a protected property interest is implicated, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

80.    That Defendant is not entitled to qualified immunity.

81.    That Plaintiff's property interests and Plaintiff's right to some kind of hearing prior to the infringement upon Plaintiff's property interest were clearly established.

82.    That Defendant's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

83.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

84.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including,

but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

85.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – DENIAL OF EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

86.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 of his Common Allegations, paragraphs 52 through 70 of Count I, and paragraphs 71 through 85 of Count II, word of word and paragraph for paragraph, as if fully restated herein.

87.   That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

88.   That the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

89.     That at all times material hereto, Defendant acted under the color of State law.

90.     That at all times material hereto and by virtue of his reports of Sgt. Chiros' unlawful behavior and his participation in the related internal affairs investigation, Plaintiff belonged to an identifiable group of troopers.

91.     That Defendant systematically retaliated against members of that identifiable group, subjecting them to disparate treatment.

92.     That Defendant treated the identifiable group differently than similarly situated troopers outside the identifiable group.

93.     That Defendant lacked a rational basis for the different treatment.

94.     That Defendant pursued the disparate treatment for unlawful and unethical purposes in violation of the Michigan State Police rules and regulations and with the intent to retaliate and harm Plaintiff and other members of said identifiable group.

95.     That as part of that disparate treatment, Defendant took adverse action against Plaintiff, including, but not limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list.

96.     That Defendant is not entitled to qualified immunity.

97.     That Plaintiff's equal protection right to be treated similar to those in similar positions and without irrational adverse action is clearly established.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

98.     That Defendant's actions constitute a denial of equal protection of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

99.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

100.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

101.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

102.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 51 of his Common Allegations, paragraphs 52 through 70 of Count I, paragraphs 71 through 85 of Count II, and paragraphs 86 through 101 of Count III, word of word and paragraph for paragraph, as if fully restated herein.

103.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

104.    That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

105.    That the Due Process Clause of the Fourteenth Amendment protects a citizen's right to be free from government actions that shock the conscience and from arbitrary and capricious government actions.  *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).

106.    That Defendant engaged in a scheme to retaliate against individuals who reported Sgt. Chiros' unlawful and unethical conduct and participated in the internal affairs investigation into Sgt. Chiros' behavior.

107. That Defendant was motivated by her personal relationship with Sgt. Chiros and sought to intentionally harm those that crossed either of them or their compatriots.

108. That Defendant further made false accusations that Plaintiff and other individuals who reported Sgt. Chiros' unlawful and unethical behavior and participated in the internal affairs investigation had lied during said investigation and/or fabricated their statements to the Michigan State Police.

109. That by doing so, Defendant caused Plaintiff and several individuals to be inappropriately placed on the Genesee County *Brady-Giglio* list and Plaintiff to be subjected to criminal investigation.

110. That Defendant's actions shock the conscience and violate the decencies of civilized conduct.

111. That Defendant's actions are so offensive that they do not comport with the traditional ideas of fair play and decency.

112. That Defendant intended to injure Plaintiff and others.

113. That Defendant's actions were premeditated and intentional.

114. That Defendant is not entitled to qualified immunity.

115. That Plaintiff's right to be free from conscience-shocking governmental action and/or arbitrary and capricious governmental action is clearly established.

116. That Defendant's actions constitute a denial of substantive due process

in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

117.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

118.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

119.    That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>August 21,  2024</u>          By:     */s/ Victor J. Mastromarco, Jr.*
_____
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, CASEY MCLAUGHLIN-SMITH, by and through

his attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury

on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: August 21, 2024          By:  */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414