UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY McLAUGHLIN-SMITH,

             Plaintiff,                      Case No. 2:24-cv-12194

v.                                     Honorable Susan K. DeClercq
                                     United States District Judge

YVONNE BRANTLEY,

             Defendant.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 12), ENTERING DEFAULT JUDGMENT IN FAVOR OF PLAINTIFF, AND DIRECTING PLAINTIFF TO SERVE A COPY OF THIS ORDER ON DEFENDANT**

This is one of several cases filed in this district by various employees of the Michigan State Police against Defendant Yvonne Brantley in which Brantley has failed to answer or otherwise appear in the case.[1] As with most of them, here, Plaintiff Casey McLaughlin-Smith is suing Brantley for constitutional violations pursuant to 42 U.S.C. § 1983. ECF No. 1. Before this Court is Plaintiff's motion for default judgment, ECF No. 12. As explained below, Plaintiff's motion will be granted.

---

[1] A search of the court's CM/ECF system revealed six other cases filed against Brantley in this District in 2024: *Salski v. Brantley*, No. 24-11819; *Hart v. Brantley*, No. 24-12136; *Haenlein v. Brantley*, No. 24-12187; *Minchella v. Brantley*, No. 24-12680; *Neilson v. Brantley*, No. 24-10934; *Whipple v. Brantley*, No. 24-12088.

## I. BACKGROUND

Plaintiff Casey McLaughlin-Smith is employed as a Trooper with the Michigan State Police (MSP). ECF No.1 at PageID.2. In March 2023, Plaintiff attended a wedding with his colleagues and his supervisor, Sargeant Jared Chiros. *Id*. at PageID.3. During the wedding, a fight broke out between Sgt. Chiros and another MSP Trooper, which led to an internal affairs complaint against Sgt. Chiros. *Id*. at PageID.3–4. Plaintiff was interviewed as part of the internal affairs investigation and Sgt. Chiros later was suspended. *Id*., PageID.4–5.

In September 2023, Plaintiff learned that he had been placed on the Genessee County Prosecutor's Office's *Brady-Giglio* list, *id*. at PageID.7, which tracks the "names and details of law enforcement officers [who] have sustained incidents of untruthfulness or lack of candor." *Id*. at PageID.5. Plaintiff's inclusion on this list adversely affected his employment because it placed his "credibility into question," and consequently, prosecutors "will frequently" decline to pursue criminal charges involving law enforcement officers on that list. *Id*. at PageID.5–6.

Plaintiff was never told why he was placed on the *Brady-Giglio* list, but he believed that Defendant Brantley "caused" it to occur "in retaliation" for his cooperation in the investigation against Sgt. Chiros. *Id*. at PageID.6–7. Therefore, Plaintiff filed a § 1983 suit against Brantley for violating his constitutional rights to free speech, procedural and substantive due process, and equal protection. *Id*. at

- 2 -

PageID.7–8. Plaintiff "is unaware of the total time he spent on the *Brady-Giglio* list," but alleges that he suffered economic damages as a result. *Id.*

Using a process server, Plaintiff personally served a summons and the complaint on Brantley on October 24, 2024. *See* ECF No. 7. When Brantley failed to timely appear or answer, Plaintiff requested a clerk's entry of default, ECF No. 9, which was entered on December 27, 2024, ECF No. 10. In May 2025, Plaintiff filed a motion for default judgment and requested a hearing be held to determine the amount of damages. ECF No. 12. This Court held an evidentiary hearing on November 20, 2025, *see* ECF No. 13, and Plaintiff's counsel filed a supplemental brief in support of Plaintiff's motion on January 8, 2026, ECF No. 14.

## II. LEGAL STANDARD

Civil Rule 55 "governs the entry of judgment by default." *Allstate Ins. Co. v. Cantrell Funeral Home Inc.*, 506 F. Supp. 3d 529, 540 (E.D. Mich. 2020). District courts may enter default judgment against a party who has "failed to plead or otherwise defend" an action and against whom the Clerk of the Court has entered a default. *See* FED. R. CIV. P. 55(a), (b)(2); *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) *adopting report and recommendation* ("When a defendant is in default, the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true.").

- 3 -

Yet a plaintiff seeking default judgment under Civil Rule 55(b) is "not entitled to a default judgment as of right." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 2685 (4d ed.). Courts must "exercise sound judicial discretion" in deciding if default judgment is proper. *Id.*

Indeed, before granting a motion for default judgment, this Court must ensure that (1) it has both subject-matter jurisdiction over the claim and personal jurisdiction over the defendant, (2) the defendant was properly served, (3) the defendant has failed to appear and to defend, and (4) the plaintiff is entitled to the relief sought. *See Marelli Auto. Lighting v. Indus. BM de Mex.*, No. 2:20-CV-10331, 2021 WL 5121273, at *1–2 (E.D. Mich. Nov. 4, 2021) (citations omitted).

### III. DISCUSSION

### A. Procedural Requirements

This Court will begin with the question of whether this Court has subject-matter and personal jurisdiction. "Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted). Therefore, based upon allegations made in Plaintiff's complaint, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as this case involves claims under 42 U.S.C. § 1983, a federal statute. *See* ECF No. 1. In addition, this Court may exercise personal

jurisdiction over Brantley because Plaintiff alleges she is a citizen of and domiciled in Michigan. *Id*. at PageID.2.

Turning next to the question of whether Defendant was properly served, it appears that Plaintiff properly effected service on Brantley under the Federal rules by personally serving her on November 4, 2024. *See* ECF No. 7.

Despite being properly served, Brantley did not file an answer or otherwise appear in this case. The clerk's entry of default entered in December 2024, ECF No. 10, was appropriate given Brantley's failure to respond. Indeed, default must be entered if a party fails to plead or otherwise to defend. *See* FED. R. CIV. P. 55(a). And in the nearly 14 months since the clerk's entry of default was entered, Brantley still has not appeared.

Thus, as explained above, the three procedural prerequisites for default under Civil Rule 55(a) have been satisfied. *See id.*; *see also Marelli*, 2021 WL 5121273, at *2.

**B. Plaintiff's Entitlement to Relief**

Having satisfied the procedural requirements, this Court must next determine whether Plaintiff is entitled to the relief sought. To that end, this Court takes the well-pleaded allegations of the complaint as true, except those relating to the amount of damages. *Marelli Auto. Lighting v. Indus. BM de Mex.*, No. 2:20-CV-10331, 2021 WL 5121273, at *1 (E.D. Mich. Nov. 4,

- 5 -

2021) (quoting *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)). When considering whether entering default judgment is appropriate, courts consider equity and fairness espoused in the following factors:

> 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits.

*Russell v. City of Farmington*, 34 F. App'x 196, 198 (6th Cir. 2002).

In considering the first three factors, this Court heavily relies upon, incorporates, and adopts the thorough reasoning set forth by United States District Judge Stephen J. Murphy, III, in his May 2, 2025 Order Granting in Part Motion for Default in the related case of *Minella v. Brantley*, Case No. 2:24-cv-12680 (E.D. Mich.) at ECF No. 11. As in *Minella*, Plaintiff here engaged in protected speech by cooperating in an internal affairs investigation and reporting misconduct. Defendant Brantley caused Plaintiff to be put on the *Brady-Giglio* list because of that speech. And because of the severe consequences for a law enforcement officer being placed on that list, including reputational damage and the adverse impact on that officer's

cases, Brantley's conduct is likely to chill speech. Thus, Plaintiff is entitled to default judgment on his First Amendment claim.[2]

Moreover, Brantley has failed to enter an appearance or respond in any way to this lawsuit, which leaves Plaintiff with no other way to resolve his claim other than to obtain a default judgment; this is clear and significant prejudice. Brantley had ample opportunity to present disputes but chose not to engage. Moreover, no evidence suggests Brantley defaulted due to excusable neglect. The service of process was executed correctly, ensuring that Brantley was properly notified of this case. The absence of Brantley's response and engagement suggests a willful decision to ignore the lawsuit.

And although there is a general preference for decisions on the merits, it does not override the necessity of enforcing procedural rules and ensuring that plaintiffs can obtain relief when defendants fail to participate. *Cunningham v. Acct. Processing Grp.*, No. 2:21-CV-00120, 2022 WL 900618, at *4 (S.D. Ohio Mar. 28, 2022) ("Where trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of litigants actually before them." (citing *Toler v. Glob. Coll. of Nat. Med.*, No. 4:13-CV-10433, 2016 WL 67529, at

---

[2] However, for the same reasons explained in Judge Murphys Order in *Minella*, Plaintiff is not entitled to default judgment on his due process or equal protection claims. *See Minella v. Brantley*, Case No. 2:24-12680 (E.D. Mich.) at ECF No. 11, PageID.63–66.

*9 (E.D. Mich. Jan. 6, 2016))). Accordingly, the merits of this case, as presented through Plaintiff's uncontested allegations and supporting evidence, justify the entry of a default judgment on Plaintiff's First Amendment claim only.

Thus, this Court will proceed to determine the amount of damages to which Plaintiff is entitled.

### C. Damages

Although well-pleaded factual allegations in a complaint are taken as true when a defendant is in default, damages are not. *Ford Motor Company*, 441 F. Supp. 2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). Under Civil Rule 55(b)(2), the district court "may conduct hearings . . . to determine the [applicable] amount of damages" or "establish the truth of any allegation by evidence." FED. R. CIV. P. 55(b)(2).

The level of damages for a violation of 42 U.S.C. § 1983 "is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). Compensatory damages "may include not only out of pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Id*. at 307. Plaintiffs can also recover punitive damages under section 1983 where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected

rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

1.

This Court held a hearing on the issue of damages on November 20, 2025. At the hearing, the only evidence submitted to this Court was the testimony of Plaintiff. Plaintiff testified that he was on the *Brady-Giglio* list for approximately 2 months. He also stated that because he would have problems testifying while on the *Brady-Giglio* list, he was transferred from his special assignment in Flint to another county. Due to that transfer, Plaintiff asserts that he lost out on approximately $10,000 in overtime pay, based on his calculations of what he made in Flint, where he worked 20–30 hours of overtime per pay period. However, Plaintiff said that he was never told he could not work overtime, but testified he chose not to because he thought that since he was on the *Brady-Giglio* list, he would have been considered to be doing "unauthorized policing."

Plaintiff also testified that he suffered emotional distress over being put on the *Brady-Giglio* list. He testified that he was worried about whether he would be able to keep his job with MSP, and that he was upset by being accused of not being truthful. He was embarrassed that he had to explain the situation to his wife and others. And even after he was removed from the list, Plaintiff has lingering concerns

- 9 -

that when testifying in court, he is going to be asked whether he has ever been on a *Brady-Giglio* list.

In addition, Plaintiff testified that his transfer from Flint took a toll on his relationship with his wife, who is also an MSP Trooper. He explained that when he was transferred away from Flint, he could no longer see his wife as often, as she continued working at the Flint post. Plaintiff testified that he has not sought or received any medical or psychological treatment because of this distress.

Finally, Plaintiff testified that he believed Brantley's constitutional violation was willful—and thus punitive damages were available—because her actions were taken to protect her friends in senior management and she targeted the people who cooperated with the internal affairs investigation for inclusion on the *Brady-Giglio* list.

## 2.

Plaintiff has failed to carry his burden to show that he suffered any economic damages because of Defendant's violation of his First Amendment rights. Plaintiff is not entitled to compensation for loss of overtime, because there was no evidence presented that he was prohibited from or unable to work overtime as a result of his placement on the *Brady-Giglio* list—Plaintiff instead admitted that he "backed off" of overtime so as to not put himself "in a bad position." Moreover, Plaintiff presented no evidence that his transfer from his special assignment in Flint involved any

change in his base pay or benefits. Indeed, the record lacks any evidence of Plaintiff's salary, his wage history, his benefits, or any economic data related to this claim at all. The only thing in the record regarding economic loss is Plaintiff's testimony that he lost out on $10,000 in overtime, based on his own calculations. But given that Plaintiff testified it was his own choice not to work overtime during the period he was on the *Brady-Giglio* list, this amount is not compensable.

However, this Court finds that Plaintiff is entitled to compensatory damages for emotional distress and reputational damage. His testimony clearly established that his transfer and inclusion on the *Brady-Giglio* list created stress and added inconvenience in Plaintiff's life, both at home and at work. Plaintiff also credibly testified about the harm that being on the list did to his reputation professionally. Because he would not have suffered this harm but for Brantley's conduct, Plaintiff is entitled to relief.

Notably, Plaintiff has not requested a particular amount of money for the emotional and reputational harm that he suffered. Accordingly, it is left to this Court to determine the amount of damages. In doing so, this Court looked to other cases in this district involving Defendant Brantley, see Fn. 1, *infra*, and finds that Plaintiff is entitled to $5,000 for emotional distress and reputational harm. Compare *Haenlein v. Brantley*, (awarding no damages for emotional distress) with *Minella v. Brantley* (awarding the plaintiff $5,000 for emotional distress and reputational harm).

- 11 -

Moreover, Plaintiff's testimony sufficiently establishes that Brantley's conduct was willful, and so he is entitled to punitive damages in the amount of **$10,000**. This amount, like all punitive damages, is based not on damages suffered by Plaintiff, but rather acts to punish Defendant for her conduct and deter others from similar behavior. Given that Brantley was a senior official in the MSP, and the placement of an officer on the *Brady-Giglio* list can have career-long implications for that officer, this conduct cannot be tolerated and this amount seems appropriate to discourage other law enforcement supervisors from committing similar acts.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Motion for Default Judgment, ECF No. 12, is **GRANTED**.

Further, it is **ORDERED** that Default Judgment is **ENTERED** for Plaintiff Casey McLauglin-Smith and against Defendant Yvonne Brantley, in the amount of $15,000.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to serve a copy of this Judgment Order on the Defendant by certified mail, return receipt required, and file a Certificate of Service with this Court regarding the same, within fourteen (14) days of this Order.

**SO ORDERED.**

- 12 -

- 13 -

**This is a final order and closes the above-captioned case**.

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: February 24, 2026